IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RENEE ANDERSON,

    Plaintiff,

    v.

GMRI, INC.,

    Defendant,

Case No. 19-2769-KHV-ADM

## MEMORANDUM AND ORDER

This matter comes before the court on Defendant's Motion for Sanctions Against Plaintiff. (ECF 49.)  The scheduling order required the parties to participate in mediation by February 25 with their selected mediator, Sly James.  (ECF 15, at 3.)  Plaintiff Renee Anderson did not appear for that mediation.  As a result, defendant GMRI, Inc. ("GMRI") seeks: (1) its costs and fees incurred to prepare for and attend mediation and/or (2) dismissal of plaintiff's case with prejudice.  (*Id.* at 9.)  The court previously denied the second aspect of GMRI's motion as moot because the court already recommended that Anderson's claims be dismissed with prejudice.  (ECF 51.)  This order addresses the remainder of GMRI's motion in which it seeks its costs and fees.  The court will grant this aspect of GMRI's motion because Anderson's non-appearance at mediation was not substantially justified and other circumstances do not make an award unjust.  The court therefore orders Anderson to pay GMRI $6,630.75 for the reasonable expenses it incurred participating in mediation.

### I.    BACKGROUND

Anderson was previously represented by counsel, Joshua Scott.  On December 12, 2019, Scott emailed defense counsel to schedule mediation.  (ECF 49-1, at 1.)  The email stated that Anderson was "generally available in February but if I learn otherwise, I will let you know immediately."  (*Id.*)  At the scheduling conference on February 19, 2020, the parties reported that

they had already scheduled mediation with Sly James on February 25. The alternative dispute resolution procedure in the scheduling order therefore ordered the parties to mediate accordingly. (ECF 15, at 3.) All pertinent individuals appeared for the mediation, except Anderson. Scott appeared. So did defense counsel and a representative from GMRI's insurer, who traveled from Georgia. These individuals and the mediator waited for more than two hours before James suspended the mediation. (ECF 49 ¶ 11.)

Anderson says her email correspondence with Scott leading up to the mediation led her to believe that mediation would be canceled. (ECF 53, at 2.) Because Anderson relied on the emails as the reason for her non-appearance, the court directed her to either file them or submit them in camera if she believed they contained attorney-client privileged or work-product-protected communications. (ECF 55.) Anderson submitted the emails in camera. The court has now reviewed them and, for completeness of the record, the court attaches partially redacted versions of these emails as an exhibit to this order. The relevant portions reflecting Anderson and Scott's communications about mediation logistics are unredacted. But the court has redacted the other portions of the emails that are potentially attorney-client privileged and/or work-product and are not material to resolving the current motion.

The emails reveal that, on February 19, Scott told Anderson that "we are still set for mediation at my office on February 25th at 9:30" with James serving as the mediator. Anderson responded on February 21 that "I will still be there on the 25th and I will listen to everything and everyone and I will be very respectful to all, but at this point, I will be there in physicality only." Anderson then explained that she had become unhappy with Scott's representation. Scott responded the next day as follows:

> As for the mediation on February 25, I understand that you intend to be present, but you will not participate beyond that. I do

> not believe that satisfies the requirements of the Court's Order to mediate and may result in sanctions.
>   . . . .
>   It appears that you no longer want our firm to continue representing you and based on our fundamental disagreement on how to best prosecute your case, I do not believe it is possible for us to effectively represent you moving forward.
>   Please confirm that you have discharged our firm so that I may inform the Court.
>   In the interim, we will prepare a copy of your file, which we will deliver to you in a manner of your choosing so that you may obtain alternate counsel. I have also attached a copy of the Court's Scheduling Order. Please note, you will be responsible for meeting each of these deadlines whether you have secured new counsel or not. Failure to comply with the deadlines contained in the Scheduling Order could result in limitations on the admissibility of evidence and/or sanctions, including entry of judgment in favor of the Defendant.

It appears that Anderson did not respond to this email or, if she did, she did not submit her response to the court.

Anderson did not appear at mediation as scheduled at 9:30 a.m. on February 25. At 9:45 a.m., Scott emailed Anderson. He told her that all parties were present, noted that he had just left her a voicemail, and asked her to confirm whether she planned to attend:

> As I mentioned in my voicemail moments ago, your correspondence on Friday indicated that you still planned on attending today. If that is no longer the case, please let me know as soon as possible so that I might let Mr. James and the Defendant know that they need not wait any longer and they can return to Wichita and Chicago respectively.

Anderson now states that she responded to Scott's February 25 email by reiterating that she intended to participate in mediation, although she did not attach that response to the email chain she submitted to the court. According to GMRI, Scott called Anderson several more times during the two hours the parties waited at mediation, but she did not answer or return his phone calls. (ECF 49 ¶ 12.)  Mediator James also called Anderson, but GMRI states that Anderson did not return James' call until two hours after he suspended the mediation. (*Id.* at ¶ 13.)

3

Scott ultimately withdrew from being Anderson's counsel in this case—citing her non-appearance at mediation as one of the reasons for his withdrawal.  (*See* ECF 24 ¶ 1.)  Anderson also has a history of other non-appearances in this case.  As outlined in the Report and Recommendations, Anderson did not appear at a reconvened scheduling conference or the final pretrial conference, and she did not respond to chambers' communication reminding her about the hearings.  (ECF 50.)

## II.     LEGAL STANDARD

This court's local rules authorize the court to refer a case to mediation.  D. KAN. RULE 16.3(c).  When the court refers a case to mediation, the local rules require attendance "by a party or its representative with settlement authority . . . unless the court orders otherwise."  D. KAN. RULE 16.3(c)(2).  When a scheduling order requires mediation, a party that fails to comply may face sanctions under FED. R. CIV. P. 16(f).  *See* D. KAN. RULE 16.3(c)(5) (providing for sanctions under FED. R. CIV. P. 16(f)); FED. R. CIV. P. 16(f)(1)(C) (providing for sanctions for failing to obey a scheduling order); *Turner v. Young*, 205 F.R.D. 592, 595 (D. Kan. 2002) (finding that failing to send a representative with settlement authority exhibits "a lack of good faith, and could warrant sanctions under FED. R. CIV. P. 16(f)"); *see also Reed v. Bennett,* 312 F.3d 1190, 1195 (10th Cir. 2002) ("A district court undoubtedly has discretion to sanction a party for failing to prosecute or defend a case, or for failing to comply with local or federal procedural rules.").

Rule 16(f) authorizes certain sanctions set out in Rule 37.  FED. R. CIV. P. 16(f)(1).  It also requires that "the court **must** order the party, its attorney, or both to pay the reasonable expenses—including attorney's fees—incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust."  FED. R. CIV. P. 16(f)(2) (emphasis added); *see also Williamson v. Metro. Prop. & Cas.*

*Ins. Co.*, No. CIV 15-0958 JHR/LF, 2018 WL 3421327, at *4 (D.N.M. July 13, 2018) (the award is mandatory in the absence of substantial justification or a finding that other circumstances make an award unjust).  "The purpose of this provision is two-fold: (1) to insure efficient case management and disposition and (2) to compensate opposing parties for the inconvenience and expense resulting from an adversary's noncompliance with these objectives." *G.J.B. & Assocs., Inc. v. Singleton*, 913 F.2d 824, 831 (10th Cir. 1990).  Courts have broad discretion under Rule 16(f) to "use sanctions where necessary to insure not only that lawyers and parties refrain from contumacious behavior, already punishable under the various other rules and statutes, but that they fulfill their high duty to insure the expeditious and sound management of the preparation of cases for trial." *Matter of Sanction of Baker,* 744 F.2d 1438, 1440 (10th Cir. 1984) (en banc); *see also* FED. R. CIV. P. 16(f) advisory committee's note to the 1983 amendment ("[E]xplicit reference to sanctions reinforces the rule's intention to encourage forceful judicial management.").

### III.   ANDERSON'S NONCOMPLIANCE WITH THE SCHEDULING ORDER WAS NOT SUBSTANTIALLY JUSTIFIED, AND OTHER CIRCUMSTANCES DO NOT MAKE AN AWARD OF SANCTIONS IS NOT UNJUST

It is undisputed that Anderson did not appear for mediation.  She therefore did not comply with the scheduling order's requirement that the parties participate in mediation by February 25. (ECF 15, at 1.)  Rule 16(f) therefore requires an award of reasonable expenses, including attorney's fees, unless (1) Anderson's noncompliance was substantially justified, or (2) other circumstances make an award unjust.  The court cannot find that either of these circumstances are present here.

#### A.   Substantial Justification

Anderson's noncompliance is not substantially justified.  The record demonstrates that she had fair notice of the scheduled mediation, led others to believe that she planned to attend, and then simply elected not to do so.  Anderson's emails show that Scott reminded her on February 19

5

that "we are still set for mediation at my office on February 25th at 9:30." Anderson confirmed she would be there. Anderson contends that Scott's February 21 email led her to believe that mediation would be canceled because he was planning to withdraw from the case. But this belief is not a reasonable interpretation of their email dialogue. Nowhere in the email does Scott state or suggest that mediation was canceled. To the contrary, he warned Anderson that she could potentially be sanctioned if she followed through with her intention to appear at mediation but not meaningfully participate. He also attached a copy of the scheduling order requiring mediation, told Anderson she was responsible for complying with all deadlines, and warned her that failing to comply "could result in limitations on the admissibility of evidence and/or sanctions, including the entry of judgment in favor of the Defendant." There is nothing confusing about this. If Anderson wanted to call off the mediation, she should have told Scott in advance so that he could have tried to save himself and others the time and expense associated with mediation. Instead, she chose not to attend—even after her attorney tried to contact her multiple times from the mediation. He and the other participants waited approximately two hours while Anderson did not even extend to them the courtesy of telling them she was not coming. *See Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*, 275 F.3d 762, 769 (9th Cir. 2001) (upholding district court's Rule 16 sanctions where the plaintiff's representative failed to attend mediation because he was suffering from an "incapacitating headache" and did not notify the parties beforehand).

Anderson's culpability for her non-appearance is bolstered by her pattern of non-appearances at other hearings in this case. Anderson herself raises the issue of these other non-appearances, but they do not help her position. Anderson states she did not appear at the May 18 scheduling conference because she was "under the impression that everything was taken care of with the submission [of the proposed scheduling order] and there would be no need for her to

6

attend the conference on May 20." (ECF 53, at 3.)  This is contrary to the plain language of the order setting the scheduling conference, which imposed both a deadline for submitting the proposed scheduling order *and* set the hearing.[1]  (ECF 36, at 1.)  It did not give the parties the option to not appear if they agreed on their proposed deadlines.  Along the same lines, the amended scheduling order set a date for the parties to submit a jointly proposed pretrial order *and* set the pretrial hearing.  (ECF 38, at 3.)  Anderson now states she received an email from defense counsel on September 4, indicating that the pretrial conference had been "held" on September 9, which she found confusing because it used past tense.  She says she emailed him for clarification but, when he did not respond to the email, she apparently declined to appear for the pretrial conference.  In each instance, the undersigned's chambers called Anderson, who did not answer or return calls—similar to her conduct at mediation.

The scheduling orders, other court orders, defense counsel's email, and Scott's email communications with Anderson were not confusing.  Anderson could not reasonably believe she could repeatedly decline to appear as ordered.  Rather, it is clear that she simply chose not to appear for mediation (and other court hearings in the case) and now blames the court, opposing counsel, and her former counsel for her own conduct.  Because of this, the court cannot find that Anderson was substantially justified in violating the scheduling order by failing to appear for mediation as required.  This violation put others to unnecessary inconvenience and expense.

---

[1] The court set this date in consultation with the parties at a prior discovery conference on April 9.  (ECF 35.)  At no time did the court suggest that appearing at the scheduling conference was optional.

7

### B. Other Circumstances Do Not Make an Award Unjust

Anderson's other arguments do not establish that an award of expenses and fees would be unjust. She states that she has spent considerable time trying to secure new counsel, that she has damage to her vocal chords that makes communication difficult, and that she has faced other challenges while proceeding pro se. Respectfully, these are separate issues that do not bear on her non-appearance at mediation. But, more to the point, Anderson was not proceeding pro se at the time of the mediation. Scott still represented her then. Anderson had told Scott that she was unhappy with his representation, to which Scott responded that "it appears that you no longer want our firm to continue representing you" and he asked her to "[p]lease confirm that you have discharged our firm." This clearly put the ball in Anderson's court to confirm whether she wanted to terminate Scott's representation. But apparently she did not do so before mediation because Scott appeared at the mediation on her behalf. None of this leads to any reasonable conclusion that Anderson was confused. Even if she was somehow confused about her obligations, she could have asked Scott to clarify whether mediation was still set.

Anderson also argues she has a legitimate claim and, because of this, GMRI should expect to incur costs as a result of litigation, and she should not be expected to bear them. This argument reflects a misunderstanding of the purpose of sanctions. Rule 16(f) contemplates these types of sanctions "to encourage forceful judicial management" in order to "achieve the orderly and expeditious disposition of cases." *Huebner v. Midland Credit Mgmt., Inc.*, 897 F.3d 42, 53 (2d Cir. 2018) (citing FED R. CIV. P. 16(f) advisory committee's note to 1983 amendment), *cert. denied sub nom. Huebner v. Midland Credit Mgmt.*, 139 S. Ct. 1282, 203 L. Ed. 2d 280 (2019); *see also Baker*, 744 F.2d at 1141 ("Certainly the sanctions concept contained in subsection (f) is a codification of the purpose to insist that the court, the lawyers and the parties abandon habits which

unreasonably delay and otherwise interfere with the expeditious management of trial preparation."). Appearing for mediation only to wait on the opposing party, who declined to appear, is not a typical litigation cost. Rather, Anderson unnecessarily ran up litigation costs for GMRI through no fault of its own. Requiring her to bear those costs promotes efficient case management by compensating GMRI for reasonable expenses that it unnecessarily incurred and by deterring similar abusive conduct in the future.

Accordingly, the court must award GMRI its reasonable expenses, including attorneys' fees, because the court cannot find that Anderson's non-appearance at mediation was substantially justified or that other circumstances make an award unjust.

## IV.    GMRI'S REASONABLE EXPENSES

GMRI seeks an award of $6,630.75 for costs and fees incurred as a result of having its counsel prepare for and attend mediation and having an individual with settlement authority travel to Kansas City to attend mediation.

To determine reasonable attorney fees, the court multiples hours counsel reasonably spent by a reasonable hourly rate. *Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1257 (10th Cir. 2005). Here, counsel states that he billed a total of 22.5 hours at a rate of $185 per hour to prepare a pre-mediation report for GMRI and a confidential mediation statement for the mediator, to engage in mediation-specific communications with both GMRI and the mediator, and to attend the mediation. (ECF 49, at 3.) Counsel also billed seven hours of travel time at half of his standard hourly rate. (*Id.*) The court finds that these hours expended are reasonable. Based on the court's own knowledge of relevant market rates, the court also finds counsel's rate exceedingly reasonable, if not low. Notably, Anderson does not dispute the reasonableness of GMRI's request for $4,828.50 in attorney's fees.

9

GMRI also seeks $1,122.96 as reimbursement for the mediator's fee, hotel room, rental car, fuel, parking, and meals for defense counsel. (*Id.* at ¶ 16.) And GMRI seeks $679.29 as reimbursement for its insurer's representative's airline ticket, parking, transportation, meals, and mileage. Anderson contests GMRI's insurer's representative's expenses on the grounds that this individual was not required to be present for the mediation. This is incorrect. This district's local rules and case law interpreting those rules make clear that each "party or its representative with settlement authority" is required to attend mediation. *See* D. KAN. RULE 16.3(c)(2) ("Attendance by a party or its representative with settlement authority at the mediation is mandatory, unless the court orders otherwise."); *Turner*, 205 F.R.D. at 595 ("'Attendance' means to appear in person and participate directly, not to stand by or participate by telephone."). In this case, GMRI's insurance carrier's representative was required to appear in person because she was the individual with settlement authority. The court has reviewed these expenses and the accompanying receipts that GMRI submitted, and the court finds that these expenses are also reasonable.

## V.     CONCLUSION

Anderson violated the scheduling order and this district's local rules by not appearing at mediation as required. Because Anderson has not shown that the violation was substantially justified or that other circumstances would make an award unjust, the court must award GMRI its reasonable expenses, including attorney fees, in the amount of $6,630.75 pursuant to Rule 16(f)(2). Anderson must tender payment to GMRI and file a notice of compliance with this order by **November 6, 2020**.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Sanctions Against Plaintiff (ECF 49) is granted as to its request for monetary sanctions. The court previously denied the remainder of the motion as moot. (*See* ECF 51.)

**IT IS SO ORDERED.**

Dated October 23, 2020, at Topeka, Kansas.

s/ Angel D. Mitchell  
Angel D. Mitchell  
U.S. Magistrate Judge

11